## THE KROGER COMPANY *v.* Sam STANDARD, Jr.

84-10                                              670 S.W.2d 803

Supreme Court of Arkansas
Opinion delivered June 18, 1984
[Rehearing denied July 16, 1984.*]

*PURTLE, J., would grant rehearing.

*Owens, McHaney & Calhoun,* by: *John C. Calhoun, Jr.* and *James M. McHaney, Jr.,* for appellant.

*Hulen & Cuffman,* by: *Phillip Cuffman,* for appellee.

ROBERT H. DUDLEY, Justice. The manager of the Kroger store on Camp Robinson Road in North Little Rock gave the police an affidavit stating that appellee had concealed a boneless ham in a sack and attempted to leave the store without paying for it. The police arrested appellee pursuant to Ark. Stat. Ann. § 41-2251 (b) (Repl. 1977), which provides

that a merchant's affidavit is sufficient probable cause for making an arrest. Appellee was acquitted and subsequently filed this suit for malicious prosecution. A jury awarded appellee $7,000 compensatory damages and $36,000 punitive damages. Appellant then filed a motion for judgment n.o.v. or, in the alternative, for a new trial or remittitur. The trial court denied the motion for judgment n.o.v. and a new trial on the condition that appellee consent to a remittitur to $7,000 compensatory and $18,000 punitive damages. Appellee consented to the remittitur, and appellant Kroger filed a notice of appeal. Appellee filed a notice of cross-appeal for reinstatement of the jury punitive damage award. We reverse and dismiss on direct appeal. Jurisdiction is in this court under Rule 29 (1)(o).

We first address appellee's motion to dismiss the direct appeal. Although we have never had the issue presented, the general rule is that, when the trial court has ruled that the amount of the verdict is excessive, but has permitted the plaintiff to elect between consenting to a reduction of his verdict or a new trial, and the plaintiff selects remittitur, he is bound thereby and may not appeal. 4 Am. Jur. 2d, *Appeal and Error* § 245 (1962) citing *Fulton* v. *Ewing*, 336 Mich. 51, 57 N.W.2d 441 (1953); *Sergeant* v. *Watson Bros. Transp. Co.*, 224 Iowa 185, 52 N.W.2d 86 (1952), and *Florida East Coast Ry. Co.* v. *Buckles*, 83 Fla. 599, 92 So. 159 (1922). See also Annotation, 16 A.L.R.3d 1327, *Party's Acceptance of Remittitur in Lower Court As Affecting His Right to Complain in Appellate Court As To Amount of Damages for Personal Injury*. Here, the defendant sought either a remittitur or a new trial. The trial court ordered a remittitur if the plaintiff consented, or alternatively, if he did not consent, a new trial. The plaintiff chose to consent to the reduced judgment and, under the general rule, cannot appeal. However, in this case it is the defendant who seeks to appeal. The plaintiff contends that the defendant impliedly consented to the reduced judgment and barred itself from appeal, and a defendant should be barred from appeal just the same as the plaintiff is barred. Although this is the rule in some states, we think the fairer procedure is to allow a defendant to appeal. We agree with the reasoning of the Kansas Supreme Court which held that when a party against whom the

verdict was entered makes a motion to reduce the verdict and the motion is granted and the judgment entered for the residue, that party has neither acquiesced nor consented in the new judgment, and is not barred from appeal. *Garden City* v. *Commercial Turf Irrigation*, 230 Kan. 272, 634 P. 2d 1067 (1981); overruling *Anstaett* v. *Christesen*, 192 Kan. 572, 389 P.2d 773, and *Hawkins* v. *Wilson*, 174 Kan. 602, 257 P.2d 1110. Here, as in the Kansas case, the defendant did not formally consent to the judgment as did plaintiff. Moreover, the defendant never had a chance to accept or reject the amount of reduced judgment, as did the plaintiff. Thus, in this matter of first impression, we hold that a defendant may appeal, even though he had previously moved in the alternative that a judgment against him be reduced or that he be granted a new trial and the plalintiff consented to the alternatively ordered remittitur. However, when the defendant appeals, the plaintiff will be allowed to file a cross-appeal. *Morrison* v. *Lowe*, 274 Ark. 358, 625 S.W.2d 452 (1981). Since the appeal and cross-appeal are allowed in this case, we discuss the merits of the appeal.

Appellant Kroger's principal argument is that probable cause existed for the prosecution of appellee and therefore it was entitled to a judgment notwithstanding the jury verdict. The test for determining probable cause is an objective one based not upon the accused's actual guilt, but upon the exsitence of facts or credible information that would induce a person of ordinary caution to believe the accused to be guilty. *Malvern Brick and Tile Co.* v. *Hill*, 232 Ark. 1000, 342 S.W.2d 305 (1961). Ordinary caution is a standard of reasonableness which presents an issue for the jury when the proof is in dispute or is subject to reasonable inferences. *Parker* v. *Brush*, 276 Ark. 437, 637 S.W.2d 539 (1982). The trial judge may decide, as a matter of law, whether ordinary caution exists only when the facts and the reasonable inferences from those facts are undisputed. *Id.* A trial judge may grant a judgment n.o.v. if there is no substantial evidence to support the jury verdict, and one party is entitled to judgment as a matter of law. *Findley's Adm'x* v. *Time Ins. Co.*, 269 Ark. 257, 599 S.W.2d 736 (1980). The definition and test for substantial evidence are stated in *Pickens-Bond Const. Co.* v. *Case*, 266 Ark. 323, 584 S.W.2d 21 (1979):

Substantial evidence has been defined as "evidence that is of sufficient force and character that it will, with reasonable and material certainty and precision, compel a conclusion one way or the other. It must force or induce the mind to pass beyond a suspicion or conjecture." Ford on Evidence, Vol. 4, § 549, page 2760. Substantial evidence has also been defined as "evidence furnishing a substantial basis of fact from which the fact in issue can reasonably be inferred; and the test is not satisfied by evidence which merely creates a suspicion or which amounts to no more than a scintilla or which gives equal support to inconsistent inferences." Wigmore on Evidence, Vol. IX, 3rd ed § 2494, footnote at page 300. See also *Tigue* v. *Caddo Minerals Co.*, 253 Ark. 1140, 491 S.W.2d 574; *Goza* v. *Central Ark. Dev. Council*, 254 Ark. 694, 496 S.W.2d 388.

It is the duty of the appellate court to determine whether there was competent substantial evidence to support the jury verdict. Although many facts in this case are disputed, the facts concerning Kroger's exercise of ordinary caution are not. Kroger had the benefit of Ark. Stat. Ann. § 41-2202 (2) (Repl. 1977) which provides:

Shoplifting Presumption. The knowing concealment, upon his person or the person of another, of unpurchased goods or merchandise offered for sale by any store or other business establishment shall give rise to a presumption that the actor took goods with the purpose of depriving the owner, or another person having an interest therein.

Given this statutory presumption, there was substantial evidence that the appellant exercised ordinary caution. Appellee's proof only created a suspicion or caused conjecture. Moreover, Rule 301 of the Arkansas Uniform Rules of Evidence provides that "a presumption imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence." Appellee's testimony, when viewed in light of the shoplifting presumption and Rule 301, is not substantial evidence that Kroger failed to exercise the ordinary caution

exhibited by the reasonable prudent merchant. Appellee's proof thus fails to meet the substantial evidence test. The lack of substantial evidence of Kroger's failure to exercise ordinary caution leaves us with Kroger's evidence that it did exercise ordinary caution. It follows that the trial court should have granted a judgment notwithstanding the verdict.

The facts in this case, when viewed most favorably to the appellee, as we are bound to review them, are summarized as follows: Appellee worked as a route salesman for Max Factor and as such regularly serviced several Kroger stores in the Little Rock area. He was servicing his account at the Kroger store on Camp Robinson Road when a Kroger employee asked him for some Toujours Moi, a perfume spray. Appellee took two of Kroger's bottles of perfume from the shelf and wrote a Max Factor credit slip for $25.00 to pay for the perfume. He routinely did this as a promotion for Max Factor. Appellee then decided to purchase a boneless ham. He wanted to purchase the ham with the Max Factor credit slip but he knew that Max Factor policy prohibited him from writing more than one credit slip a month at each store. He decided he would replace the two bottles of perfume and exchange the credit slip for the ham. He intented to get one of the replacement bottles from the trunk of his car and the other from a pharmacy in North Little Rock, bring them both back to the store, and place them on the shelf. He told one of the regular employees that he wanted to exchange the merchandise but he knew it would require the approval of someone in higher authority at the store. The person he had hoped would authorize the exchange was not at work that day. In plain view of a Kroger employee, he picked up the ham and placed it inside a heavy brown paper bag. The employee reported what she had seen to the manager. Later, appellee was in a back room of the store when the manager came in. He said nothing to the manager about the ham because the manager seemed to be in a hurry. The manager subsequently asked a different employee to verify if appellee still had the ham in the bag. The employee confirmed that appellee still had the ham. Appellee then folded the top of the bag to keep air from getting to the cold ham, placed a claim for credit across the

top of the bag and stapled it shut. The claim for credit recited that it was for Max Factor "credit script # 92821." Max Factor credit script #92821 recited that it was for "Unsalable items nonreturnable." The claim for credit said nothing about a ham. If the store manager had not known the ham was in the bag, he would have thought it was damaged Max Factor merchandise because Max Factor merchandise is all that appellee was authorized to pick up with a claim for credit. The manager next went to a place in the front area of the store by a railing which was twenty-one feet two inches past the last cash register and six feet six inches from the front door. The appellee observed the store manager and walked past the cash register toward the manager. Appellee testified:

> I walked up to this railing. I set the ham on top of the railing and he turned around and he said "What do you have?" I said "I have a credit here I have written for perfume and I have a ham to see if you will authorize an exchange of merchandise for Toujours Moi."

The store manager then asked appellee to go to the office and discuss the concealed ham. Appellee testified that the store manager said it looked like appellee was going to walk out of the store. Appellee responded by saying, "No way. You don't even take a paper clip without authorization." Appellee explained that he intended to exchange merchandise. Appellee was allowed to leave the store and he continued his route. While he was gone the store manager checked with the two employees who had received the perfume and they said the credit slip was for the perfume. Late in the afternoon appellee received a call from the Kroger area manager who asked him to return to the store. Upon returning to the office appellee was informed by both the store manager and area manager that it looked like he was trying to leave the store with the merchandise. Appellee then again stated that he intended to replace the perfume and exchange script for the ham. He had brought the two replacement bottles of pefume with him. The area manager then left the room and the store manager told appellee that he would not authorize an exchange like that. Appellee testified that he told the store manager that all he wanted was

an authorization. The area manager stuck his head in five minutes later and said, "Book him." The arrest and prosecution followed. The jury found Kroger guilty of malicious prosecution and fixed the amounts at $7,000 for compensatory damages and $36,000 for punitive damages. The trial court reduced the punitive damages but refused to grant a judgment for the defendant notwithstanding the verdict.

The evidence which would induce a person of ordinary caution to believe the accused to be guilty is substantial. The appellee placed the ham in a heavy brown paper bag, folded the top of the bag over, placed a claim for credit across the top of the bag and stapled it shut. The ham was concealed in the bag and the claim for credit indicated to Kroger employees that damaged Max Factor merchandise was in the bag. The appellee had the opportunity, in the back room, to ask the store manager if he could exchange merchandise and pay for the ham with the script but he did not do so. The appellee walked twenty-one feet past the cash register without paying for the concealed ham. He got to within six feet six inches of the front door when the manager turned around and faced him. Again, he said nothing about the ham. It was not until after the manager asked, "What do you have?" that appellee offered any explanation of the concealed ham. This constitutes substantial evidence by which a person of ordinary caution would believe appellee was guilty of shoplifting. We are left with the question of whether there was any substantial evidence of lack of ordinary caution so that a jury question was presented.

At common law, if a storekeeper observed someone stealing his goods, he was permitted to use reasonable force to retake the goods. However, there was no room for mistake and if the shopkeeper was wrong, he was liable. *See* 28 Proof of Fact 2d, Customer's Concealment, § 1, 47 ALR 3d 998, False Imprisonment — Shoplifters, § 3. At that time most storekeepers had small shops and kept most of their wares stacked on shelves behind glass counters. The customers could not ordinarily touch the goods out of the shopkeeper's sight and consequently there was little doubt when someone was stealing. Today, modern supermarkets are tens of thousands of square feet in size and display nearly all of their

goods on open shelves within easy reach of the customer. The customer picks up the goods and can continue shopping over the entire store area before taking his selections to a check-out stand. This great size and easy accessibility make it very difficult for a merchant to know when someone is shoplifting from the shelves. *See* 28 Proof of Fact 2d, *Customer's Concealment, supra.*

The common law is not sufficient to protect today's merchants. Many states, including Arkansas, have enacted legislation which is designed to protect merchants who, in good faith and with ordinary caution, detain suspected shoplifters or prosecute them. *See* Ark. Stat. Ann. § 41-2202 (2) (Repl. 1977), *supra.*

The facts of this case, coupled with the shoplifting presumption would induce a person of ordinary caution to believe appellee was guilty of shoplifting.

The appellee contends there is a substantial evidence of lack of ordinary caution for three reasons. First, appellee contends he was walking to the store manager to discuss the exchange and not to get out of the store, when the store manager asked him what was in the sack. Second, he explained that he wanted to exchange the merchandise. Third, the store manager did not immediately decide to prosecute. None of the arguments amount to substantial evidence of lack of ordinary caution. Appellee's subjective intent while walking past the check-out counter is not an overt act which can be observed by a merchant. The refusal of the store manager and area manager to believe an improbable explanation does not amount to substantial evidence of lack of ordinary caution. The fact that the appellant chose to take three or four hours before initiating the prosecution is evidence of more than ordinary caution, not substantial evidence of lack of caution. There simply is no substantial evidence of lack of ordinary caution. Thus, the trial court erred in failing to grant a judgment notwithstanding the jury verdict.

The trial court recognized the lack of substantial evidence to prove lack of ordinary caution when he observed:

I have trouble even finding that they even acted wrongly at all. And that's my biggest hurdle trying to get over that. I was tempted to say, let's just set it aside and try it new because I just don't think that's a good verdict. I think the testimony your man gave, frankly, was just preposterous. And maybe I should have granted a directed verdict. You know, I gave the benefit of the doubt and let it go to the jury. Maybe we ought to just set it aside and try it again.

\* \* \*

The far more logical story is what Kroger represented. It just doesn't even compare in logic.

\* \* \*

This guy tried to walk out with a ham without paying for it.

There is no substantial evidence to sustain the verdict on direct appeal. Reversed and dismissed on direct appeal. Consequently, the cross-appeal is moot.

PURTLE, J., and HOLLINGSWORTH, J., dissent.

JOHN I. PURTLE, Justice, dissenting. I reach a different conclusion because I find there is substantial evidence to sustain the verdict. It is necessary to restate some of the facts to establish the substantial evidence upon which I rely. The appellee wrote a $25.00 credit script, which he was authorized to do, against the Max Factor account at the Kroger store here in question. Subsequently he went to the meat department and selected a ham which he intended to pay for with the credit script. He placed the ham in a bag and placed the claim for credit across the top of the bag and stapled it shut. He stated he intended to discuss the matter with a Kroger employee with whom he was acquainted, but the Kroger employee was not at work that day. He decided to talk with the manager of the store about the exchange. At this time the manager was near the store exit inside the store building. The appellee openly carried the ham to the

manager and stated he wanted to get authorization to exchange the credit script for the ham. The first words which were spoken between the two men were: "What do you have?" "I have a credit here I have written for perfume and I have a ham to see if you will authorize an exchange of merchandise for Toujours Moi." During subsequent conversation the manager stated it looked like appellee was going out of the store with the ham. The appellee's response was, "No way. You don't even take a paper clip without authorization." Other employees of Kroger testified that appellee was open and above board with everything he did in relation to the transaction here in question.

I take exception to the words in the majority opinion referring to the ham as being "concealed." In the first place a ham is at least partially concealed when it is packaged for sale. However, in this case several employees saw the ham placed in the paper bag. The first thing the appellee said to the manager, was, "I have a ham." The appellee never attempted in any manner to deny that he had a ham in the bag. In fact I do not think that the majority means to state that he tried to steal the ham. The question was whether there was substantial evidence to support the action taken by appellant. I think not. The appellee explained in detail why he had the ham. His story was backed up by a number of Kroger employees. The manager may possibly have had cause to be suspicious or even to think that appellee was attempting to sneak the ham out. However, after appellee's explanation and verification by other Kroger employees, there was absolutely no ground upon which the appellant could file valid charges and accuse the man of stealing. This was borne out by the fact that he was acquitted at the trial he was forced to endure because of the vindictive and malicious acts of the appellant's store manager. I would affirm.

HOLLLINGSOWRTH, J., joins in this dissent.