Raymond THOMAS, Individually and as Special Administrator of the Estate of William E. Thomas, Deceased *v.* Dr. Leslie SESSIONS, et. al.

91-19                                        818 S.W.2d 940

Supreme Court of Arkansas
Opinion delivered November 11, 1991

*Morgan E. Welch, P.A.*, by: *L. Ashton Adcock*, for appellant.

*Mitchell, Williams, Selig and Tucker*, by: *Sherry P. Bartley*, for appellee.

STEELE HAYS, Justice. This is a wrongful death action against two physicians and a hospital based on claims of medical

malpractice. The hospital, Jefferson Regional Medical Center, and one of the physicians, Dr. Carl Bell, were dismissed by summary judgment. The other, Dr. Leslie Sessions, was acquitted by a jury verdict. The personal representative has appealed, contending there were material issues of fact as to Dr. Bell and trial errors with respect to Dr. Sessions and the hospital. We reverse and remand as to Dr. Bell and Dr. Sessions, but finding no issues of fact affecting the hospital, we affirm in part.

In appeals from summary judgment our review is in conformity with the rule that we examine the facts in a light most favorable to the appellant, and any doubts or inferences must be resolved against the moving party. *Pinkston* v. *Lovell*, 296 Ark. 543, 759 S.W.2d 20 (1988).

On the late afternoon of October 24, 1984, Misty Sturgis called on her neighbor, Mr. William E. Thomas. She found him in acute distress: sweating profusely, weak and trembling, extremely flushed, experiencing nausea, chest pain and numbness in his left arm. At her insistence Thomas agreed to go to the Jefferson Regional Medical Center and Ms. Sturgis drove him there, arriving around five o'clock. Ms. Sturgis asked the emergency room personnel to do an EKG. Another friend, Ms. Bernadette Allen, arrived and the two stayed with Thomas waiting for the doctor to see him. Ms. Allen testified to Thomas's chest pain, as well as generalized pain. After some two hours Thomas left the emergency room, though whether he left of his own volition or was refused admission, is a disputed question. Thomas collapsed later that evening, was returned to the emergency room at 9:43 p.m., and expired shortly thereafter. Death was attributed to myocardial infarction.

Suit for wrongful death was brought by special administrator, alleging that Drs. Bell and Sessions conferred by telephone and concluded, without taking a proper history or performing proper tests and examinations, that Thomas was dehydrated due to alcoholism, resulting in a misdiagnosis and an abandonment in that Thomas was refused admittance to the hospital. Tests performed after Thomas's second trip to the emergency room showed his blood alcohol content to be zero.

The hospital's motion for summary judgment, which we will address momentarily, was based on a contractual agreement

between the hospital and a group of physicians, including Dr. Sessions, operating as independent contractors. The summary judgment motion of Dr. Bell was grounded on the absence of genuine issues of material fact and in considering the motion the trial court had before it the depositions of Dr. Bell, Dr. Sessions, Ms. Rebecca Amos, a registered nurse on duty at the emergency room at the time in question, Dr. Wayne Smith, Misty Sturgis, Bernadette Allen and various records from the emergency room.

Since Dr. Sessions had no authority to admit patients to the hospital, he consulted Dr. Bell by telephone. Dr. Bell had staff privileges at Jefferson Regional and had treated William Thomas some four years earlier. Dr. Sessions recorded Mr. Thomas's complaints as: "hypertension, drinking alcohol for several days, unable to walk without holding on to something, shakes in his legs and headaches." He also observed nausea and vomiting. Dr. Sessions maintains that he and Dr. Bell concurred in recommending that Mr. Thomas be admitted to Jefferson Regional Medical Center for detoxification, or sent to Riverview in Little Rock for a twenty-eight day program of detoxification and rehabilitation. They further contend that Thomas refused either and left the hospital against medical advice.

Dr. Bell claims his only involvement in the case "consisted of a phone call from Dr. Sessions" wherein Dr. Sessions inquired of Dr. Bell whether he would be willing to admit Mr. Thomas as a patient to the hospital for purposes of detoxification. But there may have been additional phone calls and, as we will see in a moment, opposing medical opinion from which a jury might infer that Dr. Bell's participation was more involved than merely approving Mr. Thomas's admittance to the hospital, which in itself is a sharply disputed issue of fact. Indeed, Dr. Sessions testified that he and Dr. Bell discussed symptoms, treatment, and concurred in the view that Mr. Thomas should be admitted to the hospital. The two doctors were unequivocal in their contention that Mr. Thomas refused admittance to Jefferson Regional, but Ms. Amos was not so certain—her deposition states that the only conversation she had with Dr. Bell related to Riverview, the implication being that she and Dr. Bell did not discuss Jefferson.[1]

---

[1] Indeed, Ms. Amos's trial testimony, though not germane to summary judgment, is

Moreover, the records of the emergency room do not reflect that Thomas refused hospitalization at Jefferson Regional, only that he "Refuses transfer" (a reference to Riverview).

Whether Thomas refused transfer to Riverview is, of course, immaterial. The pivotal issue is whether he was offered admission at Jefferson Regional. Appellees insist that is undisputed, but when that contention is weighed against other proof, both direct and circumstantial, we are unable to sustain the argument. The fact that Drs. Bell and Sessions maintain that Thomas did refuse, hardly renders the issue undisputed. *Sanders, Adm'x.* v. *National Old Line, Ins. Co.*, 266 Ark. 247, 538 S.W.2d 58 (1979). Moreover, there are other material questions of fact, namely, whether adequate diagnostic procedures were followed, whether Thomas's symptoms, properly diagnosed, would have indicated cardiac distress, whether, assuming Thomas refused to be hospitalized, his decision was based on an informed understanding of his condition, whether Drs. Bell and Sessions consulted, and whether early detection of myocardial infarction would have affected the likelihood of recovery.

The order of summary judgment observes that "the only competent evidence of what Dr. Bell said during the telephone conversation came from Dr. Bell, Dr. Sessions and/or Nurse Amos, who all three stated that Dr. Bell did authorize admission to Jefferson Regional Medical Center." But that presumes the credibility of interested parties and focuses on the proof of the movant while disregarding opposing proof, exactly the reverse of how the proof should be weighed in deciding a motion for summary judgment. Some courts apply the "scintilla of evidence" rule which requires a court considering summary judgment to admit the truthfulness of *all evidence* favorable to the nonmovant, thereby removing all issues of credibility from the case, and determine if there are any facts from which a jury could reasonably infer ultimate facts upon which a claim depends; if so, the case must be decided by the factfinder. *Schoen* v. *Gulledge*, 481 So.2d 1094 (S. Ct. Ala. 1985). Our own rule is similar:

---

even more explicit: "I don't remember Dr. Bell saying that Mr. Thomas needed to be admitted at Jefferson. Dr. Bell only talked to me about admitting him to Riverview. (T. 2403).

The object of summary judgment proceedings is not to try the issues, but to determine if there are any issues to be tried, and if there is any doubt whatsoever, the motion should be denied.

*Rowland* v. *Gastroenterology Assoc., P.A.,* 280 Ark. 278, 657 S.W.2d 536 (1983).

■ Nor can we agree there was no other proof as to Dr. Bell's involvement in the case. It is conceded that because Dr. Sessions had no authority to admit patients to the hospital he called Dr. Bell, who had treated Thomas. Dr. Bell was consulted by telephone not once, but as many as three times concerning Thomas's condition, symptoms and diagnosis and, according to Dr. Sessions, they concurred as to the proper course of treatment. If a jury were to agree with appellant's contention that Mr. Thomas was misdiagnosed and "abandoned" at the emergency room, it would also be within its ambit to decide whether Dr. Bell was privy to that action, giving Dr. Bell's assertions to the contrary such credence as it thought appropriate. We have said that summary judgment is not proper where evidence, although in no material dispute as to actuality, reveals aspects from which inconsistent hypothesis might reasonably be drawn and reasonable minds might differ. *Walner* v. *Bozaw*, 290 Ark. 299, 718 S.W.2d 942 (1986).

■ When the proof on the motion for summary judgment is given its strongest probative force favorable to the appellant, we cannot say no doubts exist on the issue of whether Thomas refused an offer of admission to the hospital. The plaintiff was prepared to prove that Thomas experienced symptoms consistent with cardiac distress, went to the emergency room and remained for two hours, returned home and collapsed and expired from myocardial infarction. Records of the emergency room make no mention of Thomas refusing admission at Jefferson Regional, only that he refused transfer to Riverview. Ms. Sturgis testified that she was told by emergency room personnel to take Mr. Thomas home, "there was nothing the hospital could do for him", and Ms. Allen testified she was told by a doctor at the hospital that Mr. Thomas had been drinking or was drunk, that he had an alcohol problem and "needed to be taken to Little Rock because there was nothing they could do for him."

In addition to that evidence, there is the deposition of Dr. Wayne Smith. Dr. Smith expressed the opinion that William Thomas presented classic signs of myocardial infarction at the emergency room: weakness, confusion, inability to walk, pain in chest and shoulder. Dr. Smith was particularly critical of the emergency room records pertaining to Mr. Thomas's initial visit which he labelled "grossly incomplete." He testified that the records generated on the evening of the 24th and at the hospital and Dr. Bell's office the following morning "belie the contention that Mr. Thomas was offered admission at Jefferson Regional Medical Center."

We recognize that the trial court later excluded Dr. Smith's testimony. But we disagree with that conclusion. Dr. Smith is a graduate of the University of Arkansas School of Medicine and has engaged in the general practice of medicine in Arkansas for twenty years. For the past eleven years he has limited his practice to his office, prior to that he engaged in general hospital duties including emergency room practice. Dr. Smith does not specialize in cardiology but regularly treats patients with cardiac problems and considers himself competent and qualified to render an opinion in the field of cardiology. Dr. Smith completed a general internship at St. Vincent Infirmary and has attended continuing medical education courses on a regular basis, including those dealing with cardiology. In short, Dr. Smith was not without the qualifications to testify as a medical expert based on training and experience and appellees have not demonstrated wherein Dr. Smith was incompetent to meet the moderate standards applicable to expert witnesses. *Dildine* v. *Clark Equip. Co.*, 282 Ark. 130, 666 S.W.2d 692 (1984).

Having read Dr. Smith's deposition testimony in its entirety, we are more than satisfied that he was knowledgeable by training and experience to recognize both the symptoms of cardiac distress and the appropriate medical response, whether occurring in an emergency room or an office setting. Appellees contended below that Dr. Smith's general office practice rendered him lacking in the expertise of emergency room procedures, but they have not shown us why a specialization in emergency room operations is essential in determining whether Mr.Thomas's complaints and history were properly evaluated and appropriate tests and examinations performed, all of which strike us as rather basic to the

science of medicine. In the absence of such showing, we see no reason why a medical witness of Dr. Smith's experience and background is not competent to express pertinent medical opinions.

We addressed a similar contention in *Cathey* v. *Williams*, 290 Ark. 189, 718 S.W.2d 98 (1986), where the trial court permitted a general practitioner to state his opinion that good medical care was exercised by a specialist treating the appellant. The issue there was whether the appellee, a neurosurgeon, should have ordered an immediate CT scan rather than waiting until the following day. On appeal, appellant argued that no general practitioner is qualified to testify with regard to the standard of skill that must be met by a specialist such as a neurosurgeon. We rejected that contention, citing with favor reasoning from the case of *Evans* v. *Ohanesian*, 38 Cal. App. 3d 125, 112 Cal. Rptr. 236 (1974):

> Nor is it critical whether a medical expert is a general practitioner or a specialist so long as he exhibits knowledge of the subject. Where a duly licensed and practicing physician has gained knowledge of the standard of care applicable to a specialty in which he is not directly engaged but as to which he has an opinion based on education, experience, observation or association with that specialty, his opinion is competent. [Citation.] The reason for not requiring specialization in a certain field is obvious. Physicians are reluctant to testify against each other. [Citations.] Consequently, when an expert can be found, it is immaterial whether he is a general practitioner or a specialist providing he has knowledge of the standard of care in any given field; otherwise, the plaintiff could never prove a case against a specialist unless he had an expert of the particular specialty, and the plaintiff would never be able to sue a general practitioner unless he had a general practitioner who was willing to testify as an expert. [Citation.]

■ Having held that a general practitioner is qualified to express an opinion as to the standard of skill of a neurosurgeon as to the urgency of a CT scan, we could hardly say that an experienced general practitioner who regularly sees patients with

cardiac problems may not state an opinion concerning the early indications of myocardial infarction. While we recognize the trial court's discretion in this area, that discretion is not absolute and for the reasons we have noted, we hold that it was misused in this instance.

Turning to Jefferson Regional Medical Center and Northwestern National Insurance Company, its carrier, summary judgment was ordered on the strength of an agreement between the hospital and a group of physicians, including Dr. Sessions, practicing as Arkansas Doctors Emergency Group, Inc. (ADEG). The agreement obligated the corporation to furnish professional coverage for emergency room services and contained a provision reading: "[N]othing in this agreement shall be construed to constitute any member or employee of the corporation as an agent or employee of the hospital, nor shall anything herein be construed to constitute the Hospital as agent for ADEG."

In granting summary judgment to Northwestern National Insurance Company, Jefferson Regional Medical Center's insurer, the trial court found that Dr. Sessions was an independent contractor and not an agent of Jefferson Regional Medical Center. Appellant has not shown us the error of that finding. *See Norton* v. *Hefner*, 132 Ark. 18, 198 S.W. 297 (1917); *Runyan* v. *Goodrum*, 147 Ark. 481, 228 S.W.2d 397 (1921). In *Medi-Stat, Inc.* v. *Kusturin*, 303 Ark. 45, 792 S.W.2d 869 (1990), we held that a business corporation may be liable for the acts of a physician under the doctrine of respondeat superior, but that principle has not been extended to charitable corporations. Moreover, a number of factors existed in *Medi-Stat* which are not present here.

During trial, appellant called Dr. John Dale Dunn to refute the contention that William Thomas refused admission to Jefferson Regional Medical Center. Counsel for Dr. Sessions objected on the grounds that Dr. Dunn had no qualifications for addictionology and the objection was sustained. On appeal appellant renews his argument that Dr. Dunn was qualified to give expert medical testimony and we agree. Dr. Dunn is a member of the American College of Emergency Physicians, is board certified in emergency medicine and family practice and is Chief of Emer-

gency Services and Director of Emergency Physicians at a Brownwood, Texas, hospital. He has been practicing medicine for sixteen years and practicing emergency medicine predominately since 1981. With respect to alcoholism Dr. Dunn testified more than fifty percent of the adult visits to emergency rooms nation-wide are caused by alcoholism. He stated:

> As a board certified Emergency Physician, I am called upon in my profession capacity to treat alcohol with-drawal. Alcoholics have most of their problems socially and family wise in the evenings or on weekends. (TR. 2258) Emergency Departments is frequently the only place they can go as most alcohol treatment programs are daytime programs. The Emergency Department is the place where alcoholics show up when they have an emer-gency either related to their medical problems or alcohol-ism. With alcoholics, because of their patterns of lifestyle and the times that they have problems, the Emergency Department is the most common place they might receive care for emergency conditions.

We can find no sound reason advanced by appellees as to why Dr. Dunn was not qualified to express an opinion with respect to the treatment of alcoholics in an emergency room setting. Ark. R. Evid. 702.

Two points remain—appellant argues that it was error to exclude the testimony of Ms. Christine Lalande, a claims representative for St. Paul Insurance Company, carrier for Drs. Bell and Sessions. Mrs. Lalande, in correspondence with counsel for appellant, had stated that intravenous fluids were adminis-tered to Mr. Thomas at the emergency room, an assertion which appellant evidently concedes is inaccurate. The proffered evi-dence was excluded as collateral and irrelevant and we cannot say the trial court's discretion was abused by the ruling.

Lastly, appellant contends it was error to reject an instruction in accordance with AMI 1504. However, we do not address the argument as none of the instructions are abstracted and we will not search the record to determine that the exclusion

of AMI 1504 was prejudicial to the plaintiff.

Affirmed in part and reversed and remanded in part.