The LIMITED STORES, INC. *v.*
Perrylyn WILSON-ROBINSON

93-1349                                    876 S.W.2d 248

Supreme Court of Arkansas
Opinion delivered May 16, 1994

*Wright, Lindsey & Jennings*, by: *Alston Jennings, Jr.*, for appellant.

*J. Sky Tapp*, for appellee.

STEELE HAYS, Justice. The Limited Stores, Inc. (Stores) appeals from a judgment awarding damages to Ms. Perrylyn Wilson-Robinson for false imprisonment. The jury awarded $6,850 in compensatory damages and $23,650 in punitive damages. Stores contends the trial court erred in denying motions for a directed verdict and in submitting the issue of punitive damages to the jury. We agree with those contentions and, accordingly, we reverse and dismiss.

Ms. Wilson-Robinson testified that she was shopping in The Limited Stores in North Little Rock. As she left the store the alarm on the sensormatic device sounded. Although she heard the alarm she continued out into the mall, thinking the alarm did not pertain to her. Two female employees from the store approached her. Ms. Wilson-Robinson testified "[t]hey asked if I would return to the store because when I left out the buzzer went off." "I said, 'Well, sure,' because I hadn't done anything."

When the two employees and Ms. Wilson-Robinson reentered the store the alarm did not go off. One of the employees then asked if she had a calculator in her bag. She said, "Yes, I have a calculator,' and I opened up my bag. I said, 'See, you know, here's the calculator.'" At that point one of the employees waved the calculator in front of the device but the alarm did not go off. The employee then said: "Well, okay, you know, it is fine. You can leave now." Ms. Wilson-Robinson asked to meet with the store manager and, after speaking with her, she left.

Ms. Wilson-Robinson testified there were other people leaving the store when she heard the alarm and she felt she was stopped because "I'm a heavy set black female, and I carry a large purse." In explaining why she returned to the store, she testified:

> When they stopped me on the mall, my impression was that they were accusing me of taking something, so I really didn't have a choice, so I said, 'Sure, I will go back,' because I knew I hadn't done anything. And, if I hadn't gone back, then the consequences was saying, well, maybe she is guilty. So I went back to the store because I didn't do anything.

Other testimony, viewed in the light most favorable to Ms. Wilson-Robinson, is as follows: Ms. Patsy Stalter, a witness for the appellee, testified one of the store employees informed her "they thought she [Ms. Wilson-Robinson] had taken something because the buzzer went off, and they were just trying to find out what she had taken." Ms. Stalter also testified the employees "were just asking her to see in her purse" and Ms. Wilson-Robinson agreed to let them look inside the purse. Joe Yasinski, District Manager for Stores, testified the company had no written policy for instances where the sensormatic alarm is triggered. In addition, he testified new employees attend an orientation course which lasts approximately sixty to ninety minutes; however, only one percent of the orientation addresses shoplifting procedures.

At the conclusion of the plaintiff's proof and at the end of the trial Stores moved for a directed verdict on the issues of false imprisonment and punitive damages. These motions were denied.

▇▇ In determining whether a directed verdict should have been granted, we view the evidence in the light most favorable to the party against whom the verdict is sought and give it its highest probative value, taking into account all reasonable inferences deducible from it. *Mankey* v. *Wal-Mart Stores, Inc.*, 314 Ark. 14, 858 S.W.2d 85 (1993). A motion for a directed verdict should be granted only if there is no substantial evidence to support a jury verdict. *Id.* In reviewing the evidence, the weight and value to be given the testimony of the witnesses is a matter within the exclusive province of the jury. *Rathbun* v. *Ward*, 315 Ark. 264, 866 S.W.2d 403 (1993). Where the evidence is such that fair-minded persons might reach different conclusions, then a jury question is presented, and a directed verdict should be denied. *Mankey*, supra.

A merchant may detain, for a reasonable length of time, a person he or she has reasonable cause to believe is shoplifting. *See* Ark. Code Ann. § 5-36-116 (Repl. 1993); 7 Speiser, Krause and Gans, *The American Law of Torts* §27.18 (1990). However, whether Stores had grounds to detain Ms. Wilson-Robinson pursuant to the statute is not the issue. Rather, Stores contends Ms. Wilson-Robinson was not detained. Simply put, Stores contends the detention or imprisonment requirement of the tort was not met.

▇▇ False imprisonment has been defined as the unlawful violation of the personal liberty of another, consisting of *detention* without sufficient legal authority. *Headrick* v. *Wal-Mart Stores, Inc.*, 293 Ark. 433, 738 S.W.2d 418 (1987). Any express or implied threat of force whereby one is deprived of his liberty or compelled to go where one does not wish to go is an imprisonment. *Pettijohn* v. *Smith et al*, 255 Ark. 780, 502 S.W.2d 618 (1973). Stores submits there was no detention, imprisonment or arrest. Ms. Wilson-Robinson contends there was a detention because *two* employees went after the appellee and there was an "implied threat of arrest."

▇▇ It is well established that the restraint constituting a false imprisonment may be by threats of force which intimidate the plaintiff into compliance with orders. Restatement (Second) of Torts § 40 (1965); Prosser and Keeton, *Prosser and Keeton on Torts* § 11 (5th ed. 1984). Although the plaintiff is not required

to incur the risk of personal violence by resisting until force is actually used, it is essential that the restraint be against the plaintiff's will. Prosser and Keeton, supra; 1 Harper, James and Gray, *The Law of Torts* § 3.8 (2nd ed. 1986). Submission to the mere verbal direction of another, unaccompanied by force or threats of any character, does not constitute false imprisonment. *Faniel* v. *Chesapeake & Potomac Telephone Co.*, 404 A.2d 147 (D.C. 1979); *Grayson Variety Store, Inc.* v. *Shaffer*, 402 S.W.2d 424 (Ky. Ct. App. 1966); 7 Speiser, Krause and Gans, *The American Law of Torts* § 27.9 (1990). If one agrees of one's own free choice to surrender freedom of motion, as by accompanying another voluntarily to clear oneself of suspicion, rather than yielding to the constraint of a threat, then there is no imprisonment. Prosser and Keeton, supra; Harper, James and Gray, supra; *Martinez* v. *Goodyear Tire & Rubber Co.*, 651 S.W.2d 18 (Tex. App. 4 Dist. 1983); *J.C. Penney Company* v. *Romero*, 318 S.W.2d 129 (Tex. Civ. App. — San Antonio 1958, writ ref'd n.r.e.).

Stores cites *Faulkinbury* v. *U.S. Fire Ins. Co.*, 247 Ark. 70, 444 S.W.2d 254 (1969) for the point that much stronger actions are required to meet the test of an actionable detention. Faulkinbury operated a grocery and carried a public liability policy insuring against damages for false arrest. Faulkinbury settled such a claim for $5,000 and sued his insurance carrier. The issue was whether the claim was actually one of false arrest, i.e., within Faulkinbury's coverage. The trial court held the action did not constitute an action for false arrest and directed a verdict for the insurance company. On appeal, we affirmed. Factually, a young man allegedly made an insulting remark to Mr. Faulkinbury's daughter in the parking lot adjacent to his store. When Faulkinbury went to investigate he saw a car occupied by several youths and called to them to stop, and they did so. He asked them if they had said something to the girl standing in the door. They said they had not. He told them to stop two or three times while he questioned them regarding the incident. He testified that at one point he was leaning inside the car and "had my arm inside the car, holding on to the car, and him gradually trying to drive off." Finally, "after telling him to stop two or three times," Faulkinbury pulled a pistol and fired two shots into the car. Although the driver's legs were struck by the shots, the vehicle left the parking lot. We wrote:

Giving [Faulkinbury's] testimony its most favorable construction, we find no substantial proof of a false arrest. During the occurrence Faulkinbury made no statement even suggesting that he was attempting to make a citizen's arrest. Although the group of young men in the car at first stopped, they did so voluntarily rather than under any semblance of compulsion. Thereafter their freedom of movement was wholly uninhibited. They made their departure despite Faulkinbury's demands that they stop and despite his eventual resort to gunfire in a vain effort to bring the car to a halt. Upon the undisputed proof the trial court was right in holding that the injured driver's asserted cause of action against the appellants was for the tort of assault and battery rather than for that of false arrest. It was therefore not within the coverage of the policy.

The appellee would distinguish *Faulkinbury* on the ground that Ms. Wilson-Robinson was afoot whereas the *Faulkinbury* group was in an automobile. But there is no evidence that Ms. Wilson-Robinson was threatened. She simply responded voluntarily to a request occasioned by the alarm. Nor is the testimony of Ms. Stalter that the employees believed Ms. Wilson-Robinson had shoplifted telling, so long as she was not forcibly detained.

■ Although the appellee contends there was an "implied threat of arrest," threats of future action, such as calling the police and having the person arrested, are not ordinarily sufficient in themselves to effect an unlawful imprisonment. *Morales* v. *Lee*, 668 S.W.2d 867 (Tex. App. 4 Dist. 1984); Prosser and Keeton, supra. Even where the confinement is attributable to the threat of *physical* force, the submission must be responsive to a threat to apply "physical force to the other's person immediately upon the other's going or attempting to go beyond the area in which the actor intends to confine him." Restatement (Second) of Torts § 40. Submission to the threat to apply physical force at a time appreciably later than that at which the other attempts to go beyond the given area is not confinement. Restatement (Second) of Torts § 40, comment b. Consequently, even if the store employees had threatened to call the police in the instant case, there would not have been a confinement.

■ We find the appellee failed to establish the detention

element of false imprisonment. Although it is generally a jury question as to what was reasonably to be understood and implied from the defendant's conduct, the appellee did not testify or allege that she had any fear of force. *See* Prosser and Keeton, supra. In fact, she testified repeatedly that she was *"asked"* if she would return to the store, responding, "Well, sure." When she returned to the store, she was not detained by any threat of force, she was *"asked"* if she had a calculator. There is no imprisonment when one agrees to surrender her freedom of motion. *Pounders* v. *Trinity Court Nursing Home*, 265 Ark. 1, 576 S.W.2d 934 (1979).

In sum, there is insufficient evidence to establish a tort of false imprisonment. Consequently, we find the trial court erred in denying the motions for a directed verdict. The issue as to punitive damages is moot.

Reversed and dismissed.

GLAZE, J., concurs.