Marqueta MILLER *v.* The KROGER CO. and Lisa Baker

CA 02-480                                              105 S.W.3d 789

Court of Appeals of Arkansas
Divisions II, III, and IV

Substituted Opinion upon Denial of Petition for Rehearing
delivered May 21, 2003

282

*Dover Dixon Horne PLLC*, by: *Joel F. Hoover*, for appellant.

*Barber, McCaskill, Jones & Hale, P.A.*, for appellee.

A NDREE LAYTON ROAF, Judge. Marqueta Miller appeals the trial court's grant of summary judgment in favor of the Kroger Company and Lisa Baker, a Kroger employee (Kroger). Miller had sued Kroger for malicious prosecution, outrage, and false imprisonment after she was acquitted in municipal court of a shoplifting charge arising from an incident at a Kroger store. On appeal, Miller argues that the trial court erred in granting summary judgment on all three causes of action, and that genuine issues of material fact exist with respect to each cause. We agree that the trial court erred in granting summary judgment with respect to the claim of malicious prosecution, and reverse and remand as to that count.

The evidence in this case was primarily in the form of deposition testimony and a transcript of Miller's municipal court trial. The incident arose on September 25, 1999, when Miller was shopping at the Kroger store on Salem Road in Conway, Arkansas. After shopping and checking out, Miller admittedly left the store with three paperback books and a large magazine that she had not purchased. Miller claimed to have placed the items in her basket while shopping. Whether Miller placed the merchandise in or under her purse is in dispute. Miller testified that the items were under her purse in the child-seat portion of the shopping cart. She testified that the checker also placed bagged groceries in the seat, further obscuring the books, and that she in essence forgot about the items or did not realize that they had not been checked. Miller further claimed and provided a demonstration that the four books would not have fit inside her purse. Lisa Baker, the assistant manager at Kroger, testified that she observed Miller place the items inside her purse. Baker asked another employee to phone the police while she followed Miller and Jeremy Crabb, a clerk who assisted with Miller's cart, outside. Baker further testified that she could see a portion of the magazine "sticking out" when Miller was at the checkout stand.

After Miller and Crabb left the store, Baker stopped Miller and asked about the books. Baker and Crabb testified that Miller removed the items from inside her purse and gave them to Baker. However, Miller testified that she retrieved the items from beneath the purse. The conversation that took place between the two women is also in dispute. Miller eventually voluntarily reentered the store with the understanding that she was to fill out some paperwork. When Baker asked Miller to climb some steps to an office in order to fill out the paperwork, Miller stated that she was unable to climb stairs due to a medical condition. Both Crabb and Miller testified that Baker offered to call an ambulance to assist Miller in climbing the stairs; however, Baker denied ever making this statement.

Officer Jon Cole soon arrived at the store and took Miller into custody. She was handcuffed in the upstairs office and made to walk down the stairs and out past the checkout area with her hands cuffed behind her back. Officer Cole testified in the municipal court proceedings that Miller's purse was pretty full and that he "personally [didn't] see how the items could fit inside the purse," and advised Miller to take a picture of the purse. After being released from police custody several hours later, Miller returned home. She suffered a heart attack the following morning.

Miller was charged with shoplifting, or theft of property. At her trial in Conway Municipal Court, in which Officer Cole testified favorably in her defense, she was found not guilty. Miller then filed suit against Kroger for malicious prosecution, false imprisonment, and outrage. After discovery, the trial court granted summary judgment in favor of Kroger on the theory that probable cause existed as a matter of law because it was undisputed that Miller left the store with at least "partially concealed" merchandise and without permission, Miller voluntarily returned to the store to resolve the matter, and Kroger's conduct did not rise to the level required to sustain a claim for outrage. This appeal followed.

It is well settled that summary judgment is regarded simply as one of the tools in a trial court's efficiency arsenal; however, the granting of the motion is only approved when the state of the evidence as portrayed by the pleadings, affidavits, discovery responses, and admission on file is such that the nonmoving party

is not entitled to a day in court, that is, when there is not any genuine remaining issue of fact and the moving party is entitled to judgment as a matter of law. *Flentje v. First Nat'l Bank of Wynne*, 340 Ark. 563, 11 S.W.3d 531 (2000). Summary judgment is not proper "where evidence, although in no material dispute as to actuality, reveals aspects from which inconsistent hypotheses might reasonably be drawn and reasonable minds might differ." *Thomas v. Sessions*, 307 Ark. 203, 818 S.W.2d 940 (1991). The object of summary judgment proceedings is not to try the issues, but to determine if there are any issues to be tried, and if there is any doubt whatsoever, the motion should be denied. *Id.*, citing *Rowland v. Gastroenterology Assoc., P.A.*, 280 Ark. 278, 657 S.W.2d 536 (1983).

■ Miller first argues that the trial court erred in granting summary judgment on the count of malicious prosecution. In order to prevail in a claim of malicious prosecution, a plaintiff must prove the following elements: (1) a proceeding instituted by the defendants against plaintiff; (2) termination of the proceeding in favor of plaintiff; (3) absence of probable cause on the part of the defendants; (4) malice; and (5) damages. *See South Ark. Petrol. Co. v. Shiesser*, 343 Ark. 492, 36 S.W.3d 317 (2001).

The trial court found that Miller failed to establish the absence of probable cause. At the hearing and in its brief in support of summary judgment, Kroger contended that Miller's malicious prosecution claim should fail because probable cause existed as a matter of law, based upon the shopkeeper presumption found in Ark. Code Ann. § 5-36-102(b) (Repl. 1993), which provides as follows:

> The knowing concealment, upon his person or the person of another, of unpurchased goods or merchandise offered for sale by any store or other business establishment shall give rise to a presumption that the actor took the goods with the purpose of depriving the owner, or another person having interest therein.

■ Kroger further relied upon *Kroger Co. v. Standard*, 283 Ark. 44, 670 S.W.2d 803 (1984). In *Standard*, the supreme court reversed the plaintiff's judgment where Standard had knowingly concealed a ham in a sack, stapled it shut with a credit slip, and attempted to leave the store without paying for it. However, in *Wal-Mart Stores, Inc. v. Yarbrough*, 284 Ark. 345, 681 S.W.2d 359

(1984), the supreme court, in affirming the trial court's submission of the appellee's claim for malicious prosecution to the jury, distinguished the case from *Standard*, stating:

> The question the court is initially presented with is the issue of probable cause for the arrest and prosecution of the appellee. "The test for determining probable cause is an objective one based not upon the accused's actual guilt, but upon the existence of facts or credible information that would induce a person of ordinary caution to believe the accused to be guilty." Unless both the facts and the reasonable inferences to be deduced from those facts are undisputed, this issue is to be submitted to the jury.

> The appellant, relying upon *Kroger Co. v. Standard, supra*, contends that the trial court erred as a matter of law in submitting the issues of malicious prosecution and false imprisonment to the jury. This reliance is not well founded. The *Kroger Co.* court found the appellant had the benefit of the shoplifting presumption, which arises with the knowing concealment of unpurchased items. Applying, in conjunction, this presumption, and the testimony of the appellee, the court held that there was not substantial evidence that Kroger failed to exercise the ordinary caution exhibited by the reasonably prudent merchant.

> Assistant manager Caudle testified he was able to see the pen at all times during the period he was observing the appellee. The shoplifting presumption did not arise here and thus, the appellee did not have to overcome the burden imposed by Rule 301. The appellant did have probable cause for the initial stop of the appellee to question her with respect to the pen. However, it can not be held, as a matter of law, that the appellant thereafter exercised ordinary caution in these circumstances. Once the decision to stop was made, the prosecution of appellee was automatic, according to appellant. There was no effort made to listen to, or believe, the explanation proffered by appellee because there was nothing she could have said that could have changed the appellant's decision to prosecute. And additionally, the appellant continued with the prosecution after the recommendation was made by the city attorney that the action be dismissed.

> While those facts, as were all others, were undisputed, they were susceptible to different inferences. The submission of the issues of false imprisonment and malicious prosecution to the jury was entirely appropriate in these circumstances. [Citations omitted.]

We agree with Miller that the evidence in this case is in dispute as to whether there was a "knowing concealment, upon [her] person . . . of unpurchased goods. . . ." Crabb testified that he heard Miller state that "she had done nothing wrong" and say that the items had been under, rather than inside, her purse when she was initially stopped by Baker. Baker herself testified that the magazine was partially visible to her at the checkout counter. The trial court, in granting summary judgment, found only that Miller left the store with "at least partially concealed merchandise." Miller contends that the merchandise was inadvertently left under her purse while Kroger employees assert that it was inside the purse. The facts in dispute in this case thus render it distinguishable from the facts in *Standard, supra,* in which a ham had been knowingly concealed by being stapled inside a bag. These disputed facts are material to the issue of whether Miller knowingly concealed the four books with the purpose of taking the items from the store without paying for them. Moreover, as in *Yarbrough,* Baker testified that after stopping Miller, she had no choice or discretion not to pursue Miller's prosecution, and stated:

> The Kroger policy with regard to shoplifting is to make 100% sure that the person has taken merchandise. If I have any doubt, I am not supposed to stop them. . . . It is Kroger's policy to always call the police and ask them to arrest the suspect if the suspect is guilty. It is the corporate policy that whenever a shoplifter is detained, the police are to be called to arrest the suspect. I am not given a choice. If I apprehend a shoplifter, I call the police, always.

Thus, as in *Yarbrough,* once Baker made the decision to stop Miller, arrest and prosecution was automatic. The arresting officer's testifying favorably to Miller in her municipal court proceedings can also be likened to the prosecuting attorney's recommendation to dismiss the case in *Yarbrough.* Accordingly, we hold that the trial court erred in granting summary judgment to Kroger on the claim of malicious prosecution.

Miller next argues that the trial court erred in granting summary judgment on the claim of false imprisonment. Miller contends that Kroger employees induced her to return to the store under false pretenses and that she was held against her will for close to an hour before the police arrived, an excessive period of time. It

is not in dispute that Miller left the store with unpurchased goods, voluntarily returned to the store, and was aware when she did so that Baker had declined to simply allow her to pay for the items. In *The Limited Store, Inc. v. Wilson-Robinson*, 317 Ark. 80, 876 S.W.2d 248 (1994), the supreme court in reversing a jury verdict in favor of the plaintiff for false imprisonment, stated:

> It is well established that the restraint constituting a false imprisonment may be by threats of force which intimidate the plaintiff into compliance with orders. Although the plaintiff is not required to incur the risk of personal violence by resisting until force is actually used, it is essential that the restraint be against the plaintiff's will. Submission to the mere verbal direction of another, unaccompanied by force or threats of any character, does not constitute false imprisonment. If one agrees of one's own free choice to surrender freedom of motion, as by accompanying another voluntarily to clear oneself of suspicion, rather than yielding to the constraint of a threat, then there is no imprisonment. [Citations omitted.]

*Id.* at 84, 876 S.W.2d at 250-51.

■ In granting summary judgment, the trial court found that Miller voluntarily returned to the store in order to resolve the matter. Miller testified in her deposition, "I voluntarily went back inside," and that Baker was "adamant" that she was not going to simply let her pay for the books. Miller further testified that by the time the paperwork was completed, the officer who arrested her had arrived. In sum, Miller did not present any evidence of threats of force or that she was restrained against her will, and the trial court properly granted summary judgment on this count.

Miller's final argument is that the trial court erred in granting summary judgment on the claim of outrage. In support of her argument, Miller asserts that Baker testified falsely when she stated that she placed the books in her purse and cites to Kroger's actions in forcing her to walk up a flight of steps to the office, refusal to allow her to call her son so she could get a needed insulin shot, and forcing her to walk down the stairs and exit the store in handcuffs. Miller contends that she suffered physical and emotional injury as a consequence of Kroger's actions. As Kroger points out, Miller testified that after selecting the books and magazine and placing them in the child seat, she removed two paperback books of her own and

other items from her purse to retrieve her checkbook and grocery list, and that Baker must have viewed her replacing these items in her purse and believed them to be the Kroger items. Miller testified that she told Baker she felt ill, but declined Baker's offer to call an ambulance. Kroger argues that, to the extent Miller's assertion of false testimony presenting a claim for defamation, any statements given to police were related to Miller's prosecution and privileged pursuant to *Routh Wrecker Service Inc. v. Washington*, 335 Ark. 232, 980 S.W.2d 240 (1998), and that at most, Baker may have been mistaken about what she observed.

In *Faulkner v. Arkansas Children's Hospital*, 347 Ark. 941, 69 S.W.3d 393 (2002), the supreme court recently restated the standard for the tort of outrage:

> There are four elements that are necessary to establish liability for the tort of outrage: (1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was "extreme and outrageous," was "beyond all possible bounds of decency," and was "utterly intolerable in a civilized community;" (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it. In sum, this court has taken a very narrow view of claims of outrage. [Citations omitted.]

*Dillard's Department Stores, Inc. v. Adams*, 315 Ark. 303, 867 S.W.2d 442 (1993), is similar to the instant case because the outrage claim arose out of accusations of theft. In the *Dillard* case, a sales manager believed he had observed Ms. Adams, a customer, switch the price tags on two bathing suits and then purchase the one with the lower price tag. As Adams was leaving the store, the manager and a security guard stopped her, identified themselves as "Dillard's security," and asked her to accompany them to the rear of the store. In a manager's office, Adams was confronted about switching the price tags, but denied any wrongdoing. The store manager and the police were called. The store manager questioned Adams, took her picture, and told her she was banned from the store. The police issued her a citation and escorted her from the store. The entire incident lasted twenty minutes to an hour. The supreme court stated:

[W]e have addressed outrage in a cautious manner. Our recognition of this tort is not intended to "open the doors of the courts to every slight insult or indignity one must endure in life."
. . .

We cannot say Ms. Adams presented sufficient evidence for a jury instruction on the tort of outrage. Ms. Adams testified the entire incident lasted less than an hour. During that time she was not physically touched, and while Dillard's employees may have questioned her in a confrontational manner, there is no evidence that their tone was abusive or harassing. Ms. Adams testified that Ms. Hallmark initially confronted her in a professional manner and in such a way as not to draw the attention of any other customers.

We do not mean to say that Dillard's employees' actions were merely a "slight insult." We recognize Ms. Adams may well have suffered mental distress as a result of them. She was accused of a crime of which she was not convicted. We cannot, however, find in the facts alleged or shown the kind of extreme degree of outrageous conduct "as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society." Whatever the merits of the claim of Dillard's and Ms. Hallmark as to Ms. Adams's conduct (and we assume no merit in them for purposes of this appeal) nothing that was done constituted conduct fitting our definition of "outrage."

*Id.* at 305-06, 867 S.W.2d at 443-44.

Applying this standard for the tort of outrage, we cannot say that Miller's evidence is sufficient to sustain her claim. Miller acknowledged that Baker could have seen her replacing several of her own books and other items in her purse after she had removed the books at issue from the Kroger shelves and believed them to be the property of Kroger. The stairs to the office were described as several steps, a landing, and several additional steps. The incident, as in *Dillard's Department Store, Inc. v. Adams, supra,* lasted from twenty minutes to an hour, and there is no evidence that Kroger, rather than the Conway policeman, made the determination to arrest Miller instead of issuing a citation. In sum, we cannot say that Kroger's conduct as described by Miller displays the kind of "extreme degree" of outrageous conduct required to survive the motion for summary judgment brought by Kroger. Consequently we affirm the trial court's ruling as to this count.

Affirmed in part, reversed and remanded in part.

NEAL, GLADWIN, GRIFFEN, and HART, JJ, agree.

STROUD, C.J., PITTMAN, ROBBINS, and CRABTREE, JJ., would grant rehearing and affirm.

JOHN B. ROBBINS, Judge, dissenting. I respectfully dissent from today's decision holding that the trial court erred in granting summary judgment to Kroger on the claim of malicious prosecution. In my view, there is no genuine issue of material fact as to whether the appellees had probable cause to prosecute Ms. Miller, and I would affirm this case on all points.

The test for determining probable cause is an objective one based not upon the accused's actual guilt, but upon the existence of facts or credible information that would induce a person of ordinary caution to believe the accused to be guilty. *Kroger Co. v. Standard*, 283 Ark. 44, 670 S.W.2d 803 (1984). Even if the merchandise taken from the store in this case was not completely concealed, it is undisputed that Ms. Miller left the store without paying for it. In *Kroger v. Standard, supra*, the supreme court stated:

> Today, modern supermarkets are tens of thousands of square feet in size and display nearly all of their goods on open shelves within easy reach of the customer. The customer picks up the goods and can continue shopping over the entire store area before taking his selections to a check-out stand. This great size and easy accessibility make it very difficult for a merchant to know when someone is shoplifting from the shelves.

283 Ark. at 51-52, 670 S.W.2d at 807. While it was difficult, if not impossible, for Ms. Baker to know Ms. Miller's subjective intent, the circumstances of this case would have induced a person of ordinary caution to believe Ms. Miller was shoplifting.

The majority relies on *Wal-Mart Stores, Inc. v. Yarbrough*, 284 Ark. 345, 681 S.W.2d 359 (1985), in reversing on this point. However, I believe that case is distinguishable.

In *Wal-Mart Stores, Inc. v. Yarbrough, supra*, there was evidence that, after being confronted, the accused shoplifter explained that she simply forgot she had the item she removed from the store, but

that the store employee would under no circumstances accept any explanation inconsistent with theft. In the instant case, Ms. Baker testified that when she confronted Ms. Miller, Ms. Miller said she was sorry and that she was low on money. Ms. Miller testified that she told Ms. Baker she was sorry and would pay for the items. While she further testified that she did not intend to steal the items, there was no evidence that she communicated this explanation to Ms. Baker.[1] Moreover, the decision to prosecute was not automatic, as in the previously cited case. Ms. Baker testified that her job is to make 100% sure that a person has taken merchandise, and that if she has any doubt she is not supposed to stop the person. She further stated that if she apprehends a shoplifter, and the suspect is guilty, she always calls the police. This indicates that Ms. Baker attempts to determine whether a detained person is guilty of shoplifting. Ms. Baker did not testify that she made no effort to believe any explanation offered by Ms. Miller, or that nothing could have changed her decision to prosecute after the stop was made.

While the majority compares the arresting officer's favorable testimony in this case to the prosecuting attorney's recommendation to dismiss the charges in *Wal-Mart Stores Inc. v. Yarbrough, supra*, I do not think these are comparable circumstances. While the arresting officer thought that the items taken from the store could not have fit in Ms. Miller's purse, there was no evidence that the officer, the prosecutor, or anyone else made any recommendation to drop the charges.

I cannot agree that there was a genuine issue of material fact on the malicious-prosecution claim, and I would affirm the trial court's ruling that Kroger was entitled to judgment as a matter of law. Therefore, I dissent.

STROUD, C.J., PITTMAN and CRABTREE, JJ., join in this opinion.

---

[1] The majority notes that Mr. Crabb testified that he heard Ms. Miller state that "she had done nothing wrong." However, he also testified that Ms. Miller stated she was ashamed, had never done anything like that before, and would never come back to the store. He stated that Ms. Miller was contradicting herself in this respect. Taken in context, Mr. Crabb's testimony does not indicate that Ms. Miller communicated to Ms. Baker an innocent explanation for leaving the store without paying for the items.