Chris BURCH Plaintiff

v.

Jack NARON, Chris Akin and Montgomery County, Arkansas Defendants

No. 04–6006.

United States District Court, W.D. Arkansas, Hot Springs Division.

Aug. 16, 2004.

Gregory T. Karber, Carey Brian Meadors, for Plaintiff.

Michael R. Rainwater, Jason Owens, for Defendants.

### MEMORANDUM OPINION AND ORDER

DAWSON, District Judge.

Plaintiff brings this complaint against two Montgomery County Sheriff's Department Deputies and Montgomery County under the Fourteenth Amendment's equal protection clause and 42 U.S.C. § 1983. Plaintiff also seeks a permanent injunction against Defendants preventing future violations of his civil rights and future harassment and intimidation of him. Currently before the Court is Defendants' motion for summary judgment (doc. 9) on Plaintiff's claims. As reflected below, Defendants' motion is granted in part and denied in part.

### I. Background

The following facts are undisputed and viewed in the light most favorable to the non-movant:

1. Plaintiff's family owns and operates the Colonial Motel and Grocery Store in Mount Ida, Arkansas. Plaintiff is employed by the business and lives in a trailer on the property. The business is located near Lake Ouachita and the Joplin Recreation Area, which consists of campgrounds, boat docks, parking areas and a swimming area.

2. Lake Ouachita and its surrounding shoreline, including the Joplin Recreation Area, is a water resources development project managed by the Army Corp of Engineers.

3. In 1996, Bill Barnes, President of Mountain Harbor, Inc. (hereinafter Mountain Harbor), requested to

lease and develop land in the Joplin Recreation Area. The proposed development included plans for thirty cabins, a motel suite, seven boat docks and a parking lot. Public hearings were held on the matter in 1997. In May of 1998, Mountain Harbor executed a lease with the Army Corp of Engineers and began developing the area.

4. Plaintiff opposed the development and stated that the development harmed the environment, added toxins to the lake and destroyed bald eagle perching sites. He believed the lease violated federal law for various reasons. (Doc. 27, App., Pg.31B.)

5. Plaintiff was vocal in his opposition to the development and expressed his "outrage" about the development to Mr. Barnes and other Mountain Harbor employees. (Doc. 27, App., Pg.31C). By 1998, Plaintiff and Mr. Barnes developed a hostile relationship. *Id.*

6. In April of 1999, Plaintiff began distributing pamphlets at the Joplin Recreation Area. The pamphlets detailed Plaintiff's concerns about development in the area.

7. At about the same time, Plaintiff began videotaping many of his activities at the Joplin Recreation Area and at other locations. He documented the Lake Ouachita area by videotaping pollution and new development in the area. He videotaped encounters with Mountain Harbor employees, Sheriff's Deputies and Mountain Harbor Security guards. (Doc. 27, App., Pg.31L–31P.)

8. On June 4, 1999, Mr. Barnes sent a letter to Eddie Williams, Montgomery County Sheriff, complaining about Plaintiff's activities on the Mountain Harbor property and notifying the Sheriff that "at some point we are going to have to request some kind of action by the prosecuting attorney to keep [Plaintiff] off our property..." (Doc. 27, App. Pg.96.)

9. On July 2, 1999, Mr. Barnes sent the Sheriff a statement that Plaintiff was never granted permission to enter the Mountain Harbor property.

10. On July 4, 1999, a federal Park Ranger requested that Plaintiff stop distributing pamphlets at the Joplin Recreation Area because he did not have the required permission to distribute the pamphlets as required by 36 C.F.R. 327.17. When Plaintiff refused to comply, the Ranger cited him with a violation of 36 C.F.R. 327.24(b), the failure to comply with a lawful order issued by a federal employee. Plaintiff pled not guilty to this charge.

11. After the issuance of the citation, but before trial on the matter, Plaintiff alleges that Mr. Barnes continued to direct correspondence to the Sheriff's department complaining of Plaintiff's pamphlet distribution and videotaping. Plaintiff continued to distribute pamphlets and videotape in the Joplin Recreation Area.

12. Plaintiff alleges that while he was distributing pamphlets in July 1999, Rex Ennis, a Mountain Harbor security guard, ran into Plaintiff in his vehicle. Plaintiff alleges that he attempted to report this incident to the Sheriff's Department, but the Sheriff refused to arrest Mr. Ennis because no one witnessed the incident. Plaintiff also alleges the Montgomery County prosecutor's office abandoned

prosecution of Plaintiff's allegations against Mr. Ennis despite Plaintiff's objections.

13. On July 28, 1999, a Mountain Harbor security guard detained Plaintiff while he was distributing pamphlets. A Sheriff's deputy arrived and cited Plaintiff for criminal trespass.

14. The next day, Plaintiff filed a Freedom of Information Act request with the Sheriff's Department seeking information and witness statements relating to incidents involving Plaintiff on federal lands. Plaintiff alleges that the Department refused to produce responsive documents but that other citizens were able to view such documents when they made similar requests.

15. Plaintiff alleges that, in September 1999, a Sheriff's Deputy went to Plaintiff's home and arrested him for the July 1999 criminal trespass citation.

16. In October 1999, Plaintiff was convicted of criminal trespass in Montgomery County Municipal Court. Plaintiff appealed to the Circuit Court.

17. On February 8, 2000 a bench trial was held before the Hon. Bobby E. Shepherd on Plaintiff's July 4, 1999 charge of failure to comply with a lawful order issued by a federal employee. On March 3, Judge Shepherd issued an order finding that 36 C.F.R. 327.17, upon which the federal employee's order was based, was unconstitutional because it allowed the government too much discretion in denying permission to distribute leaflets and that Plaintiff was not required to comply with the Ranger's order as it was not lawful. (Doc. 27, App.Pg.105.) Accordingly, Plaintiff was found not guilty of the charged offense. *See id.*

18. On May 17, 2001, Plaintiff videotaped the application of herbicide at Lake Ouachita. Plaintiff alleges that a Sheriff's Deputy shadowed Plaintiff for several hours while he videotaped.

19. In August 2001, the Montgomery County Prosecutor abandoned the October 1999 criminal trespass charge against. Plaintiff, which was on appeal from Montgomery County Municipal Court and dismissed the criminal trespass charge.

20. On October 8, 2001, Plaintiff was walking on the roadways of the Joplin Recreation Area videotaping new development. A Mountain Harbor employee asked Plaintiff to leave and Plaintiff states that he left. The immediate area because he feared for his safety. He says he went to the campground fee taker to complain about being asked to leave, and the fee taker informed Plaintiff that the Sheriff[1] was on his way.

21. The Sheriff, Barry Spivey, arrived at the recreation area and Plaintiff videotaped their exchange. Sheriff Spivey asked Plaintiff to leave the Mountain Harbor property because Plaintiff was bothering people with his videotaping. Plaintiff declined to do so, citing his right to remain on federal lands and stating that he had "videotape to prove that [he

---

1. In 2001, Barry Spivey was the Sheriff of Montgomery County. Mr. Spivey was elected in the Fall of 2000 and took office January 1, 2001.

had not harassed anyone that day]". (Doc. 27, Pg. 8.)

22. Sheriff Spivey told Plaintiff, "[y]ou need to leave this property...If I have to come back, you're going to jail." (*Id.* at 10.) Plaintiff responded, "[f]or what?" (*Id.*) Sheriff Spivey responded "I'll find something." (*Id.*) Plaintiff responded, "[y]ou'll find something? I would like to report that I was stalked by a Mountain Harbor employee." (*Id.*) When Sheriff Spivey indicated that he had already spoken with the Mountain Harbor employee and did not intended to pursue Plaintiff's stalking complaint, Plaintiff responded that he had the video to prove his allegation. (*Id.*)

23. Sheriff Spivey asked Plaintiff why he was doing this and Plaintiff responded "[b]ecause I have a right to be here.... I'm tired of not being able to come on lands that I have a right to be on...it's against the Constitution." (*Id.*)

24. Sheriff Spivey left without arresting or citing Plaintiff. Plaintiff attempted to continue his video documentation of the development and pollution at Mountain Harbor, but was followed by Mountain Harbor employees in a truck and Plaintiff said he felt physically intimidated. Plaintiff alleges that he contacted the Sheriff's Department and asked them to take action to protect his right to be on the Mountain Harbor property but the responding Deputy refused.

25. Plaintiff continued his video documentation of Mountain Harbor's development of federal lands. He alleges that on December 7, 2001, a Mountain Harbor employee approached him in a threatening manner. Plaintiff fled but the man pursued him a quarter of a mile until Plaintiff reached his truck.

26. Plaintiff contacted the Sheriff's Department seeking protection and to report the alleged assault, but Sheriff Spivey refused to take action, allegedly saying "it's frivolous and it's bullshit. There wasn't [sic] no assault....I'm not going to do anything about it." (Doc. 27, Pg. 12.)

27. On March 14, 2002, Plaintiff says he contacted the Sheriff's Department to report that a Mountain Harbor employee had indecently exposed himself to Plaintiff, but Sheriff Spivey refused to take any action.

28. Plaintiff alleges that the next day, Sheriff's Deputy Jack Naron shadowed Plaintiff. Deputy Naron was parked in a lot across the street from Plaintiff's Motel and Grocery store. Deputy Naron allegedly refused to identify himself to Plaintiff and refused to take a statement about the previous day's alleged indecent exposure incident.

29. At the time of this incident, Deputy Naron was a part-time employee of the Sheriff's Department. He had been employed by the Arkansas Forestry Service and by Mountain Harbor as a security guard.

30. On October 4, 2002, Plaintiff was at his sister's, Cathy Sanchez's, home with several other people. The group was sitting outside on the porch listening to music and drinking alcohol. Some of the guests were not of legal drinking age. At approximately 11:32 p.m., a neighbor called in a noise complaint to the Sheriff's Department. Deputy Naron and Deputy Chris Akin responded to the call.

31. When the Deputies approached the house, Deputy Akin had pepper spray in his hand. Ms. Sanchez went out to meet the officers, but they walked by her. Deputy Naron yelled in the face of Daniel Murphy, at such close range that spittle flew into Mr. Murphy's face.[2]

32. Deputy Akin began to walk into the house but Plaintiff told him not to enter the home. Deputy Naron put his face close to Plaintiff's and yelled that if Plaintiff did not "shut up" he would go to jail. Plaintiff stood up and the Deputies told him to all down. Plaintiff sat down but then stood up again and was arrested on a disorderly conduct charge. He was handcuffed and placed in a Sheriff's cruiser, where he sat for nearly an hour.

33. During this incident, Deputy Naron allegedly yelled at Mr. Murphy, "I should have put my gun to your head. I should have sprayed you with mace." (Doc. 27, App. Pg. 16.) Mr. Murphy was also arrested on a disorderly conduct charge.

34. Several of the minors present were charged with being minors in possession of alcohol. Ms. Sanchez was charged with contributing to the delinquency of a minor.

35. Plaintiff alleges that this incident caused him to have a nervous breakdown and seek medical treatment.

36. On December 3, 2002 Plaintiff appeared with his attorney in the District Court of Montgomery County. After a trial, Plaintiff was found guilty of the October 4, 2002 disorderly conduct charge. Plaintiff appealed his conviction to the Montgomery County Circuit Court, and his appeal is still pending. Plaintiff alleges that his conviction is based on the "perjured testimony" of Deputy Naron.

37. Plaintiff continued his environmental activism and in November and December of 2002, Plaintiff distributed pamphlets and copies of Judge Shepherd's March 3, 2000 order from his family's business.

38. On December 13, 2002, two tractor-trailer trucks pulled into the Colonial Motel parking lot, blocking the parking lot. Plaintiff's father, Charlie Burch, told the two truckers to get off his property. The truckers allege that Charlie Burch waived a gun at them when he told them to leave. The truckers called the Sheriff's Department and refused to leave the scene until the Sheriff arrived.

39. Charlie Burch also contacted the Sheriff's Department about the pulling of a gun.

40. Plaintiff came outside the Motel to investigate the incident and also asked the truckers to leave. Plaintiff and the truckers exchanged words and Plaintiff went inside to get the video camera to document the events.

41. When Plaintiff returned with his video camera more words were exchanged with the truckers, culminating with one of the truckers asking Plaintiff if he wanted the trucker "run this son of a bitch (video camera) up [Plaintiff's] fucking ass." (Doc. 27, App.Videotape)

---

2. Plaintiff's counsel characterizes this as "Deputy Naron...spal In [Mr. Murphy's] face." (Doc. 27, Pg.15.) A fair reading of the affidavits of Plaintiff's witnesses reveals that Deputy Naron did not spit in anyone's face but rather was yelling at such close range that spittle flew out of his mouth. (Pl.'s Compl., Ex. B, Pg. 1 and Ex B, Pg. 11.)

A friend of Plaintiff's, Chris Dickson, attempted to calm the situation by moving between Plaintiff and the truckers and repeatedly telling Plaintiff to calm down.

42. Deputy Maron and Deputy Akin arrived at the Motel and began talking with the truckers. Plaintiff approached the group with his video camera and Deputy Naron inquired where Plaintiff's father was. Plaintiff responded that he did not know. Deputy Naron asked Plaintiff to turn off the video camera but Plaintiff refused. Deputy Naron told Plaintiff that he was under arrest.

43. According to Plaintiff, when Deputy Naron told him that he was under arrest, Plaintiff had "an uncontrollable flight response." (Doc. 27, App.Pg.19.) Deputy Naron tackled Plaintiff, breaking Plaintiff's nose.

44. Plaintiff was charged with obstruction of government operations and fleeing from an officer. On April 19, 2003, Plaintiff appeared in Montgomery County District Court and was found guilty of fleeing from an officer. Plaintiff did not appeal this conviction.

45. Plaintiff requested that the Sheriff's office charge the trucker who made the comment regarding the placement of Plaintiff's video camera with battery. The Sheriff's Department refused Plaintiff's request.

46. In March 2003, Plaintiff contacted the Sheriff's department to report a noisy generator at the Mountain Harbor resort. Plaintiff alleges that the Sheriff's Department failed to respond to his complaint.

47. On January 12, 2004, Plaintiff filed this suit alleging an equal protection violation, several § 1983 violations and seeking a permanent injunction against Defendants. Plaintiff contends that Defendants deprived him of equal protection of the law by failing to respond to his complaints of criminal activity, retaliated against him for exercising his First Amendment rights, falsely arrested him on two occasions, used excessive force against him and violated his due process rights in a Montgomery County Court proceeding.

## II. Discussion

Defendants moves for summary judgment, contending that Plaintiff cannot establish any violations of his Constitutional rights. In the alternative, Defendants argues that qualified immunity shields Defendants Naron and Akin from liability. In determining whether summary judgment is appropriate, the Court must view the facts and inferences in the light most favorable to the non-moving party. *See Rabushka v. Crane Co.*, 122 F.3d 559, 562 (8th Cir.1997). The moving party bears the burden of establishing the absence of issues of material fact in the record and of establishing that it is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If a plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case and on which he will bear the burden of proof at trial, then the moving party is entitled to summary judgment. *See id* at 323, 106 S.Ct. 2548.

### A. § 1983 False–Arrest Claim

■ Plaintiff contends that he was falsely arrested by the Montgomery County Sheriff's Department on October 4, 2002 and on December 13, 2002. Each arrest resulted in the criminal conviction of Plain-

tiff. One element that must be proved in a § 1983 false arrest claim is termination of the prior proceeding in favor of the accused. *Heck v. Humphrey,* 512 U.S. 477, 484, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994); *cf. Anderson v. Franklin County,* 192 F.3d 1125, 1131 (8th Cir.1999)(false arrest claim fails as a matter of law where officer had probable cause to make the arrest). Otherwise, a § 1983 action would provide a convicted criminal defendant with a means to collaterally attack his conviction by way of a civil suit. *See Heck,* 512 U.S. at 484, 114 S.Ct. 2364.

Plaintiff's October 4, 2002 arrest resulted in a conviction for disorderly conduct. Plaintiff appealed the conviction to the Montgomery County Circuit Court, and this appeal is still pending. All appeals from a district court to a circuit court are *de novo. See* Ark.Code Ann. § 16–13–210(b). Plaintiff, relying on *John Cheeseman Trucking, Inc. v. Pinson,* 313 Ark. 632, 637, 855 S.W.2d 941, 943 (1993), contends that because his appeal consists of a trial *de novo,* his conviction for disorderly conduct does not preclude his § 1983 claim.

■■■ The Supreme Court has "long expressed...concerns for finality and consistency and has generally declined to expand opportunities for collateral attack." *Heck,* 512 U.S. at 486, 114 S.Ct. 2364 (internal citations omitted). Allowing Plaintiff's § 1983 claim to go forward while his underlying conviction is still on appeal in the state court system, effectively allows him a collateral means of challenging his conviction through a civil torts action. *Heck* advises that § 1983, which borrowed

from general tort principles, was not meant to permit such a collateral attack. *Id.* at 486 n. 4, 114 S.Ct. 2364; *see also, Hannah v. City of Overland,* 795 F.2d 1385, 1389 (8th Cir.1986)(police officer who has probable cause to believe that a suspect has committed a crime is not liable for state law tort of false arrest simply because suspect is later proven innocent or the charges are dismissed). Accordingly, Plaintiff's false arrest claim for the October 4, 2002 arrest is precluded by his underlying conviction.[3] The granting of summary judgment on this claim is without prejudice to Plaintiff's right to refile a § 1983 action should this conviction be invalidated. *See Sheldon v. Hundley,* 83 F.3d 231, 234 (8th Cir.1996).

■■■ Plaintiff's December 13, 2002 arrest resulted in a conviction for fleeing from an officer on foot on April 19, 2003. Plaintiff has not shown that this conviction has been resolved in his favor. *Heck,* 512 U.S. at 484, 114 S.Ct. 2364. The fact that Plaintiff was acquitted of a second charge resulting from the December 13, 2002 arrest, obstruction of government operations, does not render the arrest invalid as Plaintiff cannot show a resolution in his favor on both charges stemming from the arrest. Accordingly, Plaintiff cannot establish a § 1983 claim with respect to the December 13, 2002 arrest.

■■■ In his response to Defendants' motion, Plaintiff contends that a § 1983 claim based on his July 28, 1999 citation for criminal trespass is not precluded by his conviction because he appealed his conviction and the prosecution was subsequently

---

**3.** The Court is not persuaded by Plaintiff's argument that "under no scenario could [he] now be convicted on the October disorderly conduct charge" because the State failed to meet speedy trial requirements as it has been over a year since Plaintiff appealed. The right to a speedy trial does not apply to an

appeal of a conviction. *Cf., Jolly v. State,* —— S.W.3d ——, 2004 WL 1406091 (Ark. 2004)("The right to a speedy trial does not apply to a delay in sentencing because the right to a speedy trial assures a timely trial resulting in either conviction or acquittal").

abandoned by the prosecutor. An essential element of false arrest is that the restraint used be against plaintiff's will. *See The Limited Stores, Inc. v. Wilson–Robinson*, 317 Ark. 80, 876 S.W.2d 248 (1994). In the July 28, 1999 incident, Plaintiff was issued a citation by an officer, and there is no indication that he was held against his will. Accordingly, he cannot maintain a false arrest claim based on his July 28, 1999 citation for criminal trespass.

Defendants' motion is GRANTED with respect to Plaintiff's § 1983 false arrest claims. This dismissal is without prejudice to Plaintiff's right to refile his § 1983 based on the October 4, 2002 arrest should his conviction be invalidated on appeal.

### B. § 1983 Excessive Force Claim

█ Plaintiff contends that during his December 13, 2002 arrest, Deputy Naron used excessive force against Plaintiff by tackling him, which resulted in Plaintiff's nose being broken. Plaintiff's excessive force claim is analyzed under the Fourth Amendment's objective reasonableness standard. *See Graham v. Connor*, 490 U.S. 386, 388, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). To determine whether the force used to effect the arrest was objectively reasonable, a court must balance the "nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396, 109 S.Ct. 1865 (internal citations omitted). The reasonableness of the use of force must be judged from the perspective of a reasonable officer on the scene. *See id.* A court must consider whether the totality of the circumstances justifies a particular sort of seizure. *See id.*

█ When Deputy Naron responded to the Colonial Motel and Grocery on December 13, 2002, he was responding to a report of two truck drivers being threatened with a gun. The Deputy had a brief ex-

change with Plaintiff, who was videotaping the proceedings. When Deputy Naron told Plaintiff he was under arrest, Plaintiff turned and began to run. Defendants argue that use of force in the arrest was justified by Plaintiff's flight and by the alleged presence of gun at the scene. Although there was some concern about the presence of a gun at the scene, the evidence of exigent circumstances is not sufficient to support summary judgment. Deputy Naron knew that it was Plaintiff's father and not Plaintiff who had threatened the truck drivers. Plaintiff was known to Deputy Naron and did not have a history of violence during their previous numerous encounters. Given these circumstances, a reasonable jury could conclude that the force used to subdue Plaintiff was excessive. Defendants' motion for summary judgment on Plaintiff's § 1983 excessive force claim against Deputy Naron and the County is DENIED.

█ Defendant Naron argues that qualified immunity shields him from liability for Plaintiff's excessive force claim. Government officials performing discretionary functions have a qualified immunity defense to § 1983 claims insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). An official has violated a plaintiff's clearly established rights if the official's act violated the plaintiff's federal rights and if a reasonable officer would have known that the act violated plaintiff's rights. A reasonable jury could find the force used to effect Plaintiff's arrest unconstitutional. The force involved was not extraordinarily violent, but there is a question of whether any force was necessary under the circumstances. The evidence reflects that a reasonable officer may have known that the

force used in the arrest violated Plaintiff's constitutional rights. Accordingly, qualified immunity is not available to Deputy Naron.

## C. § 1983 Deprivation of Equal Protection Claim

██ Plaintiff contends that Defendant Montgomery County deprived him of his Fourteenth Amendment right to equal protection of the law by failing to respond to his allegations of criminal activity. The Fourteenth Amendment's Equal Protection Clause guarantees every person within in a state's jurisdiction the right to be free from intentional or arbitrary discrimination. *See* U.S.C. Const. Amend. 14. Section 1983 protects persons from deprivations of the rights secured by the Constitution. *See* 42 U.S.C. § 1983. To succeed on his § 1983 claim, Plaintiff must identify an interest protected by the Constitution and demonstrate that there has been a deprivation of that interest. *See Gregory v. City of Rogers, Arkansas,* 974 F.2d 1006, 1009 (8th Cir.1992).

██ In support of his contention that the County's failure to respond to his complaints deprived him of equal protection of the laws, Plaintiff relies on *Village of Willowbrook v. Olech,* 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). This case is distinguishable from Plaintiff's in that it involved the unequal application of zoning laws. The Crux of Plaintiff's claim, however, is that the County failed to provide him with the same police protection afforded other citizens. Except in very limited circumstances, no citizen has a constitutional right to police protection. *See DeShaney v. Winnebago County Dep't of Social Services,* 489 U.S. 189, 198, 109 S.Ct. 998, 103 L.Ed.2d 249(1989)(only in limited circumstances does the State have an affirmative duty to protect or care for particular individuals). Accordingly, the failure of the County Sheriff's Department

to respond to Plaintiff's complaints cannot give rise to a § 1983 claim because it does not involve the unequal application of any constitutional or statutory right. *See, e.g., Gregory,* 974 F.2d at 1010 (Due Process Clause imposes duty on state actors to protect citizens in two situations: custodial settings where state has limited person's ability to care for themselves and where the state has affirmatively placed individual in danger that individual would not have otherwise faced). Defendants' motion for summary judgment on Plaintiff's Fourteenth Amendment Equal Protection claim is GRANTED.

## D. § 1983 Retaliation for Exercising Free Speech Claim

██ Plaintiff contends that Defendants retaliated against him for his exercising his right to free speech. To establish a § 1983 retaliation claim, a plaintiff must demonstrate he was engaged in a constitutionally protected activity, that a government official's adverse action caused him to suffer an injury which would chill a person of ordinary firmness from continuing in that activity, and that the adverse action was motivated in part by plaintiff's exercise of his constitutional rights. *See Naucke v. City of Park Hills,* 284 F.3d 923, 927 (8th Cir.2002)(internal citations omitted).

Plaintiff's peaceful distribution of pamphlets was a protected activity. *McIntyre v. Ohio Elections Comm'n,* 514 U.S. 334, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995). His videotaping activity was not because it is not speech. Viewing the facts in a light most favorable to Plaintiff, the Court assumes that the leaflet distribution was always peaceful and that the videotaping was always accompanied by the constitutionally protected activity of leaflet distribution.

The evidence does not show that the actions attributed to the Sheriff's Department were sufficiently egregious to "chill a person of ordinary firmness from continuing [to distribute pamphlets]." *Naucke*, 284 F.3d at 928. Plaintiff does not allege any embarrassment, humiliation or emotional distress stemming from the Sheriff's Department's actions.[4] The outrage and inconvenience that Plaintiff alleges as a result of the Sheriff's Department's actions would not chill a person of ordinary firmness from continuing to speak out. *Cf. Bechtel v. City of Belton*, 250 F.3d 1157, 1162 (8th Cir.2001)(not all adverse action taken in retaliation for a citizen's exercise of their free speech rights is sufficient to support a cause of action under § 1983). The record reflects that Plaintiff himself was not deterred from speaking out as he continued his activities, despite any action by the Sheriff's Department. *See Naucke*, 284 F.3d at 928 (noting in finding that a plaintiff had no § 1983 retaliation claim that plaintiff had continued to speak out despite adverse action). Accordingly, Plaintiff has not established a § 1983 retaliation claim and Defendants' motion for summary judgment on this claim is GRANTED.

### E. § 1983 Substantive Due Process Claim

Plaintiff seeks "a court order requiring the Montgomery County District Court to be a court of record if requested and done in an unobtrusive manner and without expense to the government." (Doc. 27, Pg. 50.) Decisions concerning the practices of the Arkansas State Courts are best left to the Arkansas Legislature. The Court rejects Plaintiff's request and Defendants' motion for summary judgment on Plain-

tiff's § 1983 due process claim is GRANTED.

### III. Conclusion

The Court is concerned about the conduct of the attorneys in this case. Attorneys should strive to maintain a civil relationship. While rude behavior may not constitute a technical violation of the ethical rules, such conduct puts a stain on the legal profession. Incivility has been defined as "abrasive conduct, and strident personal attacks on opponents." Bassler J. *Lost Cause or Last Chance for Civility*, N.J. Law Journal, op.ed. at 23, July 10, 1995.

Defendants' motion (doc. 9) is GRANTED with respect to Plaintiff's § 1983 claims for false arrest, due process, retaliation for exercise of free speech and denial of equal protection. Plaintiff's § 1983 false arrest claim with respect to his October 4, 2002 arrest is dismissed without prejudice to his refiling it in the event that he receives a favorable result on appeal. Defendants' motion (doc. 9) with respect to Plaintiff's excessive force claim is DENIED. The Court will conduct a pre-trial conference on this issue on Monday, August 23rd, 2004, at 4:00 p.m. in the Hot Springs Chambers, and the jury trial will begin on Tuesday, August 24th 2004, at 9:00 a.m. The attorneys are advised that the Court will address their conduct to date and the required conduct through the trial of this matter.

---

**4.** Plaintiff's allegations that he feared for his safety stem from interactions with Mountain Harbor security. (Doc. 27, App.Pg.31L.)